This day came the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, delivered the following opinion :
The various statements of accounts by the commissioner, and the conflicting opinions delivered at different times by the court of chancery, apparent in this voluminous record, ^render it extremely difficult, if not impracticable, to pursue and decide on each particular opinion : this court will therefore proceed to establish some general principles, according to which the accounts are to be adjusted.
616
The account of Robert Carter Nicholas, commencing in the 22d page of the commissioner’s first report, ought to stand, as far as it goes, with the small corrections made therein, and omitting the several articles of credit for interest which is hereinafter provided for. There appears no satisfactory proof or reasonable presumption, that any further sum of money or quantity of tobacco came to the hands of the said Nicholas, than is accounted for. The claim for an omitted crop of tobacco made in the year 1777, is merely conjectural. The annual crops are estimated, probably near the truth ; but of those, part were carried to the warehouses, and part kept at the plantations, without even a guess at the quantity of each, and yet all the latter is admitted to have come to the hands of John Ambler, after being carried to the warehouses. Robert Carter Nicholas, gives credit for tobacco sold Norton in 1778, and in December 1779, without mentioning the quantity or when made ; and there seems no reason to doubt but the crop claimed, made prior to both, was included. However, if the appellee, or John Ambler, shall desire it, let an issue be made up and tried whether any and what quantity of tobacco, and of what value, came to the hands of the said Nicholas, more than is accounted for, and if any found, to be added to his debit. The articles of loan office certificates and of cash received at the treasury to be extended and the estate charged with one thousand five hundred and thirty-one pounds, the amount of the certificates received of Ambler and Norton, in January 1778. That what is called the private account, stated in the 38th page, and the annual balances of the Westham account, commencing in the 8th page of the same report, ought to be incorporated with the said general account, in due order of time, and the articles of all to stand as nominally entered, without scaling, as to the said Nicholas, who *was a debtor during the paper era; but to be scaled when carried to the accounts of the estate, and others who were creditors during the same period. That Robert Carter Nicholas, ought to be allowed a commission of five per centum on all his receipts, including those in the Westham and private account; his account to be closed at the end of each year, and interest charged on the balance: the commissions and interest to be kept in a separate state from the account till its close in June 1780, and then the balance to be carried to that account; and if the balance then due from the said Nicholas, shall exceed two thousand five hundred and ninety pounds, (the specie borrowed,) the surplus to be scaled according to the time when such excess occurred: but if the balance shall be that only or a lesser sum, it is to stand as specie, being so much unpaid of a specie debt, and the principal is to bear interest until June 1789, a middle month of that year in which a payment was made, but no particular time ascertained. His estate is also to be charged with a moiety of one hundred and fifty-five pounds thirteen shillings and five pence, the estimated net profits of the Westham estate for each of the years 1779, 1780 and 1781, with interest from the end of each year, to June 1789, when the seventeen hundred and fifty pounds paid to John Ambler, being deducted, the executors of the said Nicholas’s will, are to be decreed to pay the balance, with interest, from that time till payment to the appellee in part of his claim.
It was proper for the commissioner to make the discriminations in the account of Robert C. Nicholas, which was kept generally with the estate of the testator, but the following errors in making it ought to be corrected, besides the sixty pounds for Byrd’s .tickets here charged to John Ambler, but afterwards properly charged to the estate, to wit:
October 1770, seventy pair of shoes charged to John, and none to Edward Cary, when it is presumable that they were for the whole slaves. The commissioner states that Edward had forty-two, and John ninety. One third part, therefore, should be charged to the former, and two thirds to the latter.
*The same occurs in May 1771, in November 1772, in November 1773, in November 1774, and in January 1776, and to be corrected in like manner.
January 1778, five pounds eighteen shillings and three pence, paid Harwood for wdrk at Jamestown, and fifty-four pounds nineteen shillings and nine pence, for sundries furnished from Westham, charged here to John Ambler, but should have been to Mrs. Ambler.
Mrs. Ambler is charged by Mr. Blair and Mr. Jacquelin Ambler, with rent for the land and hire for the slaves at the Cottage. She was therefore to pay the expense of feeding and clothing the slaves, their levies and taxes, and the doctor for attending them, and the taxes on the stock and her chariot, and the plate, if any : John only chargeable for the land tax and his riding horse, with his servant and horse, if he kept such. All other of the foregoing articles, which are here-charged to John, are to be charged to Mrs. Ambler, as are also the several articles for corn purchased, for sundries furnished from Westham, and sixty-two pounds ten *841 shillings cash, paid in part of John’s board. She was entitled to the crops, and if any part of them has been credited to John Ambler, it is to be corrected and transferred to her credit. In the credits of the account, besides the tobacco sold to Norton, here credited to the estate, but afterwards rightly to John, so much only of the money drawn for to Robert C. Nicholas and Jacquelin Ambler on Athaws and Norton & Sons, ought to be credited to the estate, as was due from those merchants to the testator, including the crop of tobacco of 1768, shipped in 1769, the goods imported in 1769, in consequence of orders from the testator, the rings and the premiums of insurance connected with them, and also the money received by Norton & Sons of Hindman and Company, with the annual interest arising therefrom. The residue of those drafts and the interest thereon, ought to be credited to Edward Cary and John Ambler, in proportion to the quantity of tobacco by them respectively shipped, between whom severally, *and the merchants, and not with the estate or executor, the accounts should be stated from thenceforth, giving them credit for the proceeds of their respective tobaccos, and charging each with his proportion of the said surplus drafts.
It is just to proportion by the ratio adopted by the commissioner, such goods as were imported for the slaves and plantation use, and his charge is so far approved. But though he reports that those cannot be discriminated from what were imported for the use of the children, if the invoices are produced, the nature of the articles will point' it out, and the amount ought to be deducted and charged to the estate. If no invoices are shewn, an estimated allowance should be made by a comparison of the total amount with the probable demands of the estate, for it does make a difference.
The accounts of Edward Cary Ambler are to be stated without other interest than his proportion of that which is charged to Robert C. Nicholas, which includes interest on the Westham balances, and without credit for liquors or furniture, and be charged with his mother’s fifth part of the profits to the year 1776, when his account is to be closed, and the balance carried to the credit of Mrs. Ambler, who is to continue to have credit for Edward’s share of the interest to September, in the year 1784, when her account ought to be closed, and any balance carried to the account of the appellee.
John Ambler ought to be charged for the thirteen years unexpired in 177S, of the term in the governour’s land, but not by the rule adopted from calculations of the value of an annuity to a person holding it, allowing compound interest yearly. The true rule is, what would this term probably have yielded if it had been sold for ready money in 1775, in which view, the article of interest would operate to lessen and not augment the amount of the annual receipts. But another capital mistake is made in this adjustment, by rating the annuity at thirty pounds. That sum was not a fixed ^annuity, but an estimated value of the yearly rent for the estate, which was charged with an annual rent to the governour, of seventeen barrels of corn, which may be moderately rated at ten pounds, and will reduce the annual charge to twenty pounds, with what might be given for the amount for thirteen years. John Ambler ought, in the ordinary course, to be charged an interest from 1775, but considering the difficulty of the estimate, and that eight years of the thirteen occurred during a war, in which the enemy was, for the greater part, in the neigh-bourhood of this estate, and the deranged state of the plantation at the close of the war, the court direct that he be charged two hundred and sixty pounds for this article, without interest, till September 1784, at which time he is also to be charged two hundred and thirty-five pounds fourteen shillings and one penny for a moiety of the stocks at Westham ; these sums, amounting to four hundred and ninety-five pounds fourteen shillings and one penny, as personal estate of Edward undisposed of, are to be distributed equally to his mother, brother and sister. For the stocks in James City, Mr. Ambler is not to be charged. The act of assembly relied on, contemplates increase or loss of an ordinary nature, and not a total destruction by an invading enemy : nor can Mrs. Ambler be presumed, from the general complexion of her will, to have meant to charge her son with a payment to his sister for what he had not, and to the loss of which he had not contributed.
The estate of Edward Ambler, ought to have credit for all the outstanding debts which appear to have been received by the 'executors, and with its proportion of the interest charged to Robert Carter Nicholas, and by John Ambler, for what of them he has actually received, an account of which he is to render upon oath, deducting a commission of five per centum, and on which he is to be charged interest from the end of each year, upon the amount of the receipts of that year, the court being of opinion that he is not further accountable, since it was not his duty to make the collection, *and he probably used proper diligence for the sake of his own interest; at the same time, it is possible that many debts may have been saved by his intromission. Any debts remaining outstanding are to be -divided equally between John Ambler and the appellee, having regard to such as are sperate and desperate; not, however, including therein the balances due from Athaws and Norton & Sons, since they arise from distinct accounts with the sons, and each of them is to receive and risk his own balance, the appellee to succeed to that of Edward Cary, discarding also, from those accounts, the balance due from Mrs. Ambler to Norton & Sons, which is to be charged to her. On failure by John Ambler to render an account of debts he has received, he is to be charged as by the' commissioner in the 6th page of his third report only deducting two hundred and sixty pounds due from Jaquelin Ambler for the bills of exchange which belongs to the accounts of the sons, and not to the estate. On this sum, John is to be charged interest from the end of two years from the time he received the accounts, as a medium period in which he had probably received considerable sums, but far from having completed the collections. .
The estate is to be charged with its several *842 articles of debit in the accounts of the executors, and with the whole amount of Mrs. Macon’s fortune, and the interest. Any balance due to the estate, is to be equally divided between John Ambler and the appel-lee, as representing Edward Cary Ambler. And to them also belongs in equal moieties, the loan office certificate of April 22d, 1779, and all interest which hath accrued thereon, except the one hundred and sixty-one pounds five shillings and seven pence, already charged to John Ambler, and for a moiety of that sum the appellee is to have credit.
The court discover no reason to relieve against the condition annexed in the will of Mrs. Ambler, to the devise to her daughter; she had surely a power to bestow her bounty on her own terms, and her motives appear to have been pure and upright to preserve peace between her children *and with their connexions, and at the same time, to prevent others from being charged for her free use of the estate; the account, therefore, which was stated by Mr. Blair and Mr. Jaquelin Ambler, ought to be taken as the ground work, rectifying such mistakes and omissions as shall be apparent; of which sort, however, the court doth not consider the charge of forty pounds a year for rent, and forty pounds a year for damages at the Cottage, when the commissioner allows but one forty pounds for both on the testimony of David and Thomas Harris, referring no doubt to their ex parte affidavit, since in their regular depositions taken in this suit in 1798, they are explicit for both sums. Mrs. Ambler is to be debited with the stated balance of- that account, and with any omissions before noted, and others if apparent ; and is to have credit for her fifth part of the profits, her third part of Edward Cary Ambler’s personal estate undisposed of, for what she is entitled to under his will, and for any articles apparently charged her improperly, or plain credits omitted ; any articles in the paper period to be scaled, and no interest allowed, except the proportions of that charged to Robert C. Nicholas as before stated; the balance to be carried to the credit of the appellee.
At the close of Mrs. Ambler’s stated account, the gentlemen state one headed, “The estate of Mary Ambler, to the estate of Edward Ambler, Dr. &Cr.,” the articles of which ought to be thus discrimin ated. In the debits, John Ambler to have credit for the hire of negroes, for cotton, wool, flax, provisions furnished by Clarkson’s and Richardson’s accounts, the rent for and damages done to the Cottage. The other articles respecting him are before directed to be set right in the* discrimination of Robert C. Nicholas’s account. The estate to have credit for the cartage of goods, and John Barrett’s account, if it is before charged with those articles, the credits in that account for Mrs. Ambler’s annual allowance of provisions, and for the board of her daughter, are to be charged to the estate, and for John Ambler’s board, to him ; from which a deduction ought to be *made for the time he was absent, but that the gentlemen seem to have considered that circumstance, and probably on that account, lessened the annual sum, five pounds below that of his brother and sister.
No account is to be taken of any new goods which were in the house when the testator died, nor of such as were afterwards imported, in consequence of his orders, such to be considered as used in the family according to his will. There is no reason to charge John Ambler with the furniture which remains in the house where Mrs. Ambler lived and died, merely because that house was his, especially as it was not the seat of his residence; unless he refused to deliver it to the appellee when required. If the parties agreed to refer it finally to the commissioner, they ought to abide by his statement, which does not appear to be unreasonable. But if no such agreement was made, John Ambler cannot be compelled to purchase the furniture, and in that case, he is to account upon oath for what he has removed, and be charged to the appellee for its value, who is to take the residue of the furniture as it is, John’s specific articles of plate excepted.
The slave George is to be considered as the property of John Ambler, and he entitled to the hire, as stated in the decree.
William H. Macon is to have credit for the one thousand pounds, to which his lady succeeded by the death of her sister, with interest thereon from October 1769, to the time of his intermarriage, and at that time for his lady’s one thousand pounds, but that interest on the whole ought to be suspended from thenceforth, until September 1784. The certificates offered by Mr. Nicholas were not a legal tender, nor would the offer have been such, if it had been to pay gold and silver. The certificates were of much more value than tenderable paper, since they bore interest, and arrested future depreciation ; but the governing principle is, that but for the offer of suspension made by the appellee, Mr. Nicholas might have procured and tendered legal money, and *subjected the appellee to a loss of nine-tenths at least of his claim ; of this, the latter seems to have been aware, and judiciously chose to sacrifice the interest to the preservation of his principal, in which he could not fail, since, if he and Mr. Ambler should not compromise, the offer of Mr. Nicholas could not operate as a legal tender to evade a specie payment of the principal. Interest during the war, ought not, in justice and equity, to have been allowed on debts due to domestic creditors, no more than to foreign ; but since it has not been attended to, either in practice or judicial decisions, until so much business has been otherwise adjusted, it would be unjust at this late era, to introduce it in a particular case, unless in one attended with peculiar circumstances. The court think it reasonable to allow John Ambler, who appears to have been but six years of age when his father died, a year after he came of age to become acquainted with the state of his affairs, and be enabled to judge of any proposed compromise. Erom that period, to wit, September 1784, the appellee is to be allowed interest for his whole two thousand pounds, deducting from the principal the thirteen hundred pounds, paid at the respective times of payment; an application, which, though it might be illiberal in Mr. Ambler to make, it was a legal right *843 of which he cannot he deprived in a court of equit}'. Prom the same period the appellee is to be allowed interest on the principal of all his other claims, all which interest, beyond what Mr. Nicholas is charged with, John Ambler ought to pay, since though the accounts were unliquidated he had the use of the money and might have deposited in court a sum to answer the eventual demand. The account of the appellee to be closed October 18th, 1789, and a decree entered for his balance of principal and interest, with interest on the principal from that day till payment; towards which the executors of Robert C. Nicholas are to pay the balance found to be due from him : Wilson Miles Cary to pay his balance and interest according to the decree, and the residue to be paid by John Ambler, as possessing the estate chargeable therewith. *The costs in chancery to be paid in third parts according to the decree. Prom the foregoing statement, it appears that the decree of the said high court of chancery is erroneous, as contravening in several instances the principles herein established ; therefore, it is decreed and ordered, that the said decree be reversed and annulled, and that the appellee pay to the appellants their costs, by them expended in the prosecution of their appeal aforesaid here. *
Which is ordered to be certified to the superior court of chancery, directed by law to be holden in Richmond, to have the accounts reformed and a final decree entered, according to the principles of this decree.*
The court of chancery, in conformity with the foregoing decree of the court of appeals, referred the accounts back to the commissioner ; who mistook the meaning of the decree, and made a different statement from that required by it. The consequence was, that Macon would sustain no loss by depreciation, but the whole of it would be thrown upon John Ambler.
Exceptions were filed to the report; but the court of chancery overruled them, and decreed that ,¿1836. 3. 6. should be paid by the estate of Robert Carter Nicholas; £44. 7. 6. by Wilson Miles Cary ; and ,¿3859.19. 9. by John Ambler.
John Ambler applied to the court of chancery for leave to file a bill to review the last mentioned decree of that court: which being refused, he appealed, to the court of appeals, from the order of refusal.
The court of appeals made the following decree:
“ This day came the parties by their counsel, and the court having maturely considered the transcript of the record of the order aforesaid, and the arguments of counsel, is of opinion, that, on no sound construction of the decree of this court, pronounced on the twenty-fifth day of October, *1803, was the commissioner justified in charging the appellant, with any loss sustained, or supposed to be sustained, by the appellee Macon in consequence of the principles on which the account was directed, by that decree, to be taken of the transactions of Robert C. Nicholas, or his representatives, in relation either to depreciation, or interest. The decree of the court of chancery, therefore, approving the report of the commissioner, and which in consequence of a departure from the manner of stating the accounts as directed by the decree of this court, improperly resulted in a charge against the appellant of the sum of twenty-five hundred and fortj- pounds eleven shillings and four pence half penny, on account of this supposed loss, is erroneous ; and ought to have been corrected on the bill of review filed in this cause. In consequence of the intricacy and perplexity of these accounts, arising as well from the manner in which they have been stated, as from the great lapse of time and other circumstances, it may happen, that some injustice may be done to some of the parties by confirming the report, except so far as it is above declared to be incorrect ; yet it is believed it will be better, at this day, to do so, than to open the accounts for new statements to be made, except so far as may be necessary to correct the error above stated. And that the order aforesaid, for the reasons before stated, is erroneous. Therefore it is decreed and ordered that the same be reversed and annulled,” with costs, &c. “And it is ordered that the cause be remanded to the said chancery court to have the accounts reformed, and a final decree entered agreeably to the foregoing principles. And if the amount of the decree has been paid, as is suggested, to order restitution of the sum which shall be found to have been improperly decreed with interest.”
The result was, that Macon had to return a very large sum, which had been paid to him, by John Ambler, under the second decree of the court of chancery.

The foregoing' decree was prepared by Mr. Pendleton, and was tlie last public act of that distinguished judge; who died the following night. “Acu-tum sane hominem, et probatum.”